ALICE RYAN, as Administratrix, etc., of EDWARD F. RYAN, Deceased, Respondent, *v.* THE FEENEY & SHEEHAN BUILDING COMPANY, Appellant.

Third Department, July 6, 1922.

Nuisance — action against United States government contractor to recover for death caused by fall of canopy on building constructed for government — canopy constructed according to government plans and under government supervision and inspection — building constructed under emergency contract — contractor not liable.

A building contractor who entered into a contract with the United States government to construct a storage depot under a contract reciting that an emergency of war existed which required the immediate performance of the work and obliged the contractor to construct the building " within the shortest possible time " according to drawings and specifications to be furnished to him by the government, and

subject to supervision, direction and inspection by government officers, is not liable for the death of the plaintiff's intestate, caused by the fall, after a heavy snowstorm, of a part of a canopy on the side of the building, where it appears that the plaintiff's intestate was in the service of the United States government at the time of the accident, and that the building was actually constructed in accordance with the plans and specifications furnished by the government, and under the direct supervision of government agents, and was accepted by the government sometime before the accident, although the rods supporting the canopy were obviously of too light a construction to support the weight placed upon them.

APPEAL by defendant, The Feeney & Sheehan Building Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Schenectady on the 29th day of December, 1921, upon the verdict of a jury for $10,000, and also from an order entered in said clerk's office on the 4th day of January, 1922, denying defendant's motion for a new trial made upon the minutes.

*Rosendale, Hessberg, Dugan & Haines* [*P. C. Dugan* of counsel], for the appellant.

*Leary & Fullerton* [*Walter A. Fullerton* of counsel], for the respondent.

COCHRANE, P. J.:

On April 11, 1918, the government of the United States contracted with the defendant for the construction of a quartermaster interior storage depot at South Schenectady, N. Y., in accordance with drawings and specifications to be furnished by the contracting officer of the government. The building was constructed by the defendant according to such drawings and specifications. The entire length of the building was nearly one-third of a mile. Attached to the building at its side was a canopy in twelve sections of approximately 140 feet each in length. The canopy was supported by seven-eighths-inch truss rods extending at an angle from the side of the main building downward to the outer edge of the canopy. The distance between the rods was about 13 feet. These rods were constructed with four welds one at each end and two where a turnbuckle arrangement was adjusted in the middle. The purpose of the welds at the extremities was to transform the rods into plates so that one end might be adjusted to the side of the main building and the other to the outer edge of the canopy. The plates were two and one-half inches wide and one-half inch thick. The plate at the outer extremity was so fashioned with respect to the rod that the plate passed over the edge of the canopy and fitted against the outer side thereof and was bolted to the canopy. The building was completed January 31, 1919. On or before

RYAN *v.* FEENEY & SHEEHAN BUILDING CO. **47**

App. Div. 45]   Third Department, July, 1922.

March 29, 1919, there occurred a fall of snow containing much water which by reason of a strong wind was drifted onto the canopy in some instances to the depth of three feet. This unusual weight caused the canopy to fall in sections. Two sections fell during the night preceding the morning of March twenty-ninth. A gang of men was organized to place supporting columns under the remaining sections of the canopy. While thus engaged supporting one section another section fell and a son of the plaintiff was killed. Every supporting truss rod was broken at the exterior weld at the edge of the canopy, the rods themselves hanging from the side of the building. The plaintiff has recovered a judgment herein against the defendant for the loss she has sustained because of the death of her son.

The defendant has been held liable because the plan for the construction of the canopy was so obviously defective and dangerous to human life that a contractor of average skill and ordinary prudence would not have attempted its construction according to the plan proposed. That was the question submitted to the jury under the principle enunciated but not applied in *Hardie* v. *Boland Company* (205 N. Y. 336) and *Cochran* v. *Sess* (168 id. 372). Those were cases involving accidents occurring during the performance of building contracts. In the latter case the reason of the principle was stated as follows: " Any one who participates in the construction of any structure which is obviously dangerous to human life is a party to the creation of a nuisance, and engaged in an active wrong for the consequences of which he may be subjected to pecuniary responsibility. It is upon this theory, and this theory alone, as it seems to us, that the defendants must be held responsible." In *Uggla* v. *Brokaw* (117 App. Div. 586) it was held that in order to charge a landlord with the consequences of an accident due to a building being out of repair while in the possession of a tenant it must be shown that the accident was the result of a condition constituting a nuisance existing at the time the landlord surrendered possession to the tenant.

The contract under which the defendant constructed the building contained the following recitals:

" WHEREAS, the Congress having declared by Joint Resolution approved April 6, 1917, that war exists between the United States of Amercia and Germany, a national emergency exists and the United States urgently requires the immediate performance of the work hereinafter described, and it is necessary that said work shall be completed within the shortest possible time; and

" WHEREAS, it is advisable, under the disturbed conditions which exist in the contracting industry throughout the country,

for the United States to depart from the usual procedure in the matter of letting contracts, and adopt means that will insure the most expeditious results."

The contract then provided that the contractor should " in the shortest possible time " furnish the labor and material necessary for the completion of the building " in accordance with the drawings and specifications to be furnished by the contracting officer and subject in every detail to his supervision, direction and instruction."

The defendant constructed the building including the canopy as required by the government according to its plans. There is no question but that the truss rods which broke including their size, shape, formation at the ends, and their adjustment to the canopy in all particulars conformed to the plans. The court so substantially instructed the jury. It seems to me there is a broad distinction between this case and a case where an individual for his own profit or convenience employs a contractor to erect an imminently dangerous structure. In such a case there is time and opportunity for deliberation, consultation and the exercise of judgment. There is involved only the interests of the immediate parties to the contract. Well may it be said that neither has any right solely for his individual profit, pleasure or convenience to endanger the life of another. In the present case the defendant has been held liable as for a nuisance because it adhered with strict fidelity to the war plans of the government in a great national crisis. If it created a nuisance the government necessarily did likewise in conducting its war operations. In the ordinary case above assumed of a building contract of one person with another the safety of individuals only is concerned. In the present case the safety of the nation was at stake. The contract on its face shows the existence of an emergency, the necessity of expedition, the urgency of the requirements, the disturbed conditions of the country, the advisability of departure from the usual procedure in the matter of letting contracts, and the adoption of means that would insure the most expeditious results. It is true the defendant was not required to make the contract but if it refused, so might every other contractor, and such refusal would tend to embarrass the government and thwart the prosecution of the war. It is true the defendant might have called the attention of the government officers to the defective plans but that would have involved a delay which was one of the contingencies most to be avoided. " Immediate performance;" completion of the work " within the shortest possible time," were required by the exigencies of the occasion. In the emergency it was not incumbent on the defendant to argue with its government as to the propriety of its plans. An

army officer in charge of construction, a supervising engineer and five inspectors, all representing the government were in constant attendance during the construction of the building. They were as competent as the defendant to judge as to the sufficiency of the construction. When the snow storm occurred which precipitated the accident, the canopy had been constructed about three months and the building itself had been completed about two months. Under the circumstances the defendant was justified in relying on the judgment of those who prepared the plans and on the supervision and inspection of the government representatives. Had it not been for the snow storm the canopy would have been sufficient. The defendant could not know that the government would not do in time that which it did too late, viz., place supports under the canopy. The defendant had a right to assume that such precautions would be taken after its duties had ceased and the building had passed beyond its control.

The deceased, a young man twenty-three years of age, was in the service of the government at the time of his death. He incurred one of the hazards of war. Not all of these hazards existed on the field of battle or in the presence of submarines. On home soil there were dangers to be incurred. Operations for the successful prosecution of the war existed at home quite as essential if not as conspicuous as those abroad. Without the former the latter could not have been conducted. Such was the situation in the present case. In one of the war activities of the government this accident occurred and the plaintiff's intestate lost his life. I cannot conclude that the government is chargeable, under those circumstances, with the creation of a nuisance, and, if not, neither was the defendant so chargeable in executing the plans of the government. In view of the discussion it should not be overlooked that the plaintiff herein is receiving compensation from the government because of the death of her son under an agreement that any recovery herein should reimburse the government for such expenditures, but such compensation by the government was not by said agreement, so far as appears, made dependent on such recovery. I fail to see the justice or equity of an action the effect of which is to cause the defendant to reimburse the government because an accident occurred for which the government was primarily responsible if responsibility under the circumstances rested anywhere. This latter consideration while perhaps not in itself a defense is an argument bearing on the main proposition we have been considering. The plaintiff is receiving compensation from the government from which such compensation is properly due, and

neither she nor the government should receive compensation from the defendant because of the performance by the defendant of the government requirements and in the manner specifically required.

The court also permitted the jury to find the verdict against the defendant if " the construction itself, the manner in which the work was done was improper in that the welding of the plate which came down over the edge of the canopy connecting with the truss rod was not properly done." There is no evidence of any improper welding. The welding itself conformed to the plans. The rods, 520 in number, were brought to the building in government trucks and were put in place by the defendant. The evidence shows no defect in the welding visible or otherwise. The rods broke in the weld but that was because they were naturally too weak to hold the weight they sustained and not because of defective material or defective workmanship in forming the welds.

The judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

All concur; KILEY, J., in the result.

Judgment and order reversed and new trial granted, with costs to the appellant to abide the event.